**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

DESA EMANUEL and LACRENA TAYLOR,


                    Plaintiffs,


            -against-

GAP, INC., BANANA REPUBLIC, LLC, as well as
MICHELLE RUSSO, TONI LYNN BOROWSKI
and GREGOIRE JEAN LOUIS, _individually,_


               Defendants.

Case No. 19-cv-03617-PMH-AEK

**<u>PROPOSED JOINT
JURY INSTRUCTIONS</u>**

       Pursuant to the Court's Individual Rules of Practice in Civil Cases, § 6(B)(i), the parties to the above-captioned action hereby submit these Joint Requests to Charge the Jury at trial. The parties respectfully request leave from the Court to submit revised or additional jury instructions based upon the evidence adduced at trial and to conform with any rulings of law rendered by the Court during the trial.

       In those instances in which the parties have agreed on an instruction, said instruction is appended with the designation "Joint Proposal." In all other instances, the parties are in disagreement and the instruction is designated as either "Plaintiffs' Proposed Jury Instruction" or "Defendants' Proposed Jury Instruction," with the opposing party's competing proposed version, if applicable, below it.  All parties respectfully reserve their right to propose modifications to the sequence and/or substance of the charges at or before the charging conference.

## JOINT PROPOSAL –<u>PRETRIAL NO. 1</u>
### (<u>INTRODUCTION</u>)

Members of the jury, before you hear the evidence in this case as well as the final arguments of the parties, I am going to instruct you generally about how a trial works. After you have heard all the evidence, and before you deliberate, I will instruct you more specifically on the law that applies in this case.

O'Malley, Grenig & Lee, <u>Federal Jury Practice and Instructions</u>, § 101.01 Opening Instructions (6th ed. 2014) (modified)

**JOINT PROPOSAL –PRETRIAL NO. 2**
**(USE OF ELECTRONIC TECHNOLOGY)**

You, as jurors, must decide this case based solely on the evidence presented here within the four walls of this courtroom.  This means that during the trial you must not conduct any independent research about this case, the matters in the case, and the individuals or entities involved in the case.  In other words, you should not consult dictionaries or reference materials, search the internet, websites, blogs, or use any other electronic tools to obtain information about this case or to help you decide the case.  Please do not try to find out information from any source outside the confines of this courtroom.

After you retire to deliberate, but not before, you may begin discussing the case with your fellow jurors, but you cannot discuss the case with anyone else until you have returned a verdict and the case is at an end.

I know that many of you use cell phones, Blackberries, smartphones, the internet and other tools of technology.  You also must not talk to anyone at any time about this case or use these tools to communicate electronically with anyone about the case.  This includes your family and friends.  You may not communicate with anyone about the case on your cell phone, through e-mail, text messaging, blog or website, or any social media platform, including Facebook, Google+, Twitter, LinkedIn, YouTube, etc.  You may not use any similar technology even if I have not specifically mentioned it here.  I expect you will inform me as soon as you become aware of another juror's violation of these instructions.

**Source**:  Proposed Model Jury Instructions: The Use of Electronic Technology to Conduct Research on or Communicate about a Case, prepared by the Judicial Conference Committee on Court Administration and Case Management (June 2012).

## JOINT PROPOSAL –<u>PRETRIAL NO. 3</u>
## <u>(JURY FUNCTION)</u>

As jurors, your fundamental duty is to decide, from all the testimony you have heard and other evidence that has been presented, what the facts are. You are the sole and exclusive judges of the facts.

You make determinations about the weight and importance of the evidence; you determine the credibility of the witnesses; you resolve any conflicts as there may be in the testimony; and you draw whatever reasonable inferences you decide to draw from the facts as you have determined. In that field you are supreme, and neither I nor anyone else may invade your job to determine the facts.

As the sole judges of the facts, you must decide which of the witnesses you believed, what portion of their testimony you accepted, and what weight you give to it.

The law permits me to comment on the evidence in the case during the trial or while instructing the jury. You, however, may disregard these comments entirely, because you are to determine for yourself the weight of the evidence and the credibility of each of the witnesses.

**Source:** <u>PJI</u> § 1:37; <u>FJIP</u> §§ 101:10, 103:33; Jury Instructions in *Delville v. Firmenich Inc.*, No. 08 Civ. 10891, ECF No. 118, at 149-85 (Nov. 13, 2013).

**JOINT PROPOSAL –PRETRIAL NO. 4**
**(NATURE OF THE CLAIMS)**

The person suing in a lawsuit is called the plaintiff. There are two plaintiffs in this case: Desa Emanuel and Lacrena Taylor. Those being sued in a lawsuit are called defendants. There are five defendants in this case: two corporations named Gap, Inc. and Banana Republic, LLC, as well as three individuals named Michelle Russo, Toni Lynn Borowski and Gregoire Jean Louis.

Under federal and state law, an employer may not discriminate against any employee because of the employee's race. Additionally, under federal and state law, an employer may not retaliate against an employee who opposes conduct that she reasonably believed to be unlawful, by, among other activities, reporting the discrimination to her employer. I will say more about all these terms in a few minutes, and, again, before you go to deliberate.

Plaintiffs both worked for Defendants Gap and Banana Republic and are alleging claims of race discrimination -- namely that they were unlawfully terminated because of their race. Defendants maintain that Plaintiffs, who were general managers of Banana Republic retail stores, were terminated following an investigation that revealed Plaintiffs altered the time records of subordinate employees, which resulted in those employees not being paid for time they worked. Defendants deny that Plaintiffs' race played a role in their decision to terminate Plaintiffs.

Plaintiffs also claim that Defendants retaliated against them for having complained to management about racial harassment and discrimination in that Gap and/or Banana Republic : (1) failed to take effective action to stop Defendant Michelle Russo from retaliating against Plaintiffs for complaining about her engaging in racial harassment and discrimination; and then (2) retaliated against Plaintiffs by terminating their employments. Defendants deny that Plaintiff's complaint played any part in the decision to terminate Plaintiffs' employment.

5

Defendants maintain that after Plaintiffs complained about Defendant Russo, an auditor, who was not aware of Plaintiffs' complaint, uncovered Plaintiffs' timecard modifications during a routine audit, and it was Plaintiffs' violation of Defendants' policies and taking time and money away from the store employees that led to their termination. .

Your role when the jury convenes after trial will be to assess the facts based on the evidence you hear at the trial and then apply the law on which I will instruct you to decide each of the different claims brought in this case. Based on the facts that you "find," you will conclude whether either or both Plaintiffs have proven each, some, or all their claims. You will then give your verdict as to each claim.

Section 703(a)(1), 704(a) and 707(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a)(1); N.Y. Exec. Law Executive Law §  296. Adapted from Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions, (4th Ed. 1987), §106.01 (1998 pocket part); Hyland v. New Haven Radiology Assoc., P.C., 794 F.2d 793, 796 (2d Cir. 1986), rev'd on other grds, Clackamas Gastroenterology Assocs., P.C. v. Wells, 538 U.S. 440 (2003), 155 L.Ed. 2d 615.

## JOINT PROPOSAL –<u>PRETRIAL NO. 5</u>
### (ORDER OF THE TRIAL)

The trial will proceed in the following manner:

First, the Plaintiffs will make an opening statement outlining their case. Then Defendants may make an opening statement. Neither Plaintiffs nor Defendants are required to make an opening statement. An opening statement is not evidence but is simply designed to provide you with an introduction as to the evidence which the party making the statement intends to produce at trial.

Second, the Plaintiffs will then present evidence in support of their claims, and counsel for Defendants may cross-examine the witnesses called by the Plaintiff. Following the Plaintiffs' case, Defendants may present evidence and Plaintiffs' counsel may cross-examine any witnesses of Defendants. Defendants, however, are not obliged to introduce any evidence or to call any witnesses. If Defendants introduce evidence, the Plaintiffs may then introduce rebuttal evidence.

Third, after presentation of evidence is completed, the attorneys may present closing arguments to you to summarize what they consider the evidence to have shown, and the inferences they contend you should draw from the evidence. As with opening statements, closing arguments are not evidence. The arguments are designed to present to you the contentions of the parties based on the evidence presented. The Plaintiffs have the right to open and to close the argument.

Finally, I will then instruct you further on the law that you are to apply in reaching your verdict. I will provide you with general introductory instructions on the role of the Court and the jury, and the burden of proof. I will describe the law to be applied to the facts as you find them based on the evidence. I will then instruct you on damages. I will also give you instruction on how to evaluate of evidence. Finally, I will instruct you on the deliberations.

After that, you will retire to deliberate on your verdict. I will provide each of you with a copy of these instructions before you deliberate.

Adapted from Devitt, Blackmar & Wolff, <u>Federal Jury Practice and Instructions</u> (4th Ed. 1987), §70.02.

## JOINT PROPOSAL –<u>PRETRIAL NO. 6</u>
### (ROLE OF JUDGE AND JURY; EVIDENCE AND OBJECTIONS)

During the trial, I expect to be called upon to make rulings on various questions. It is the duty of the attorneys for each side of the case to object when the other side offers testimony or other evidence that the attorney believes is not admissible. Counsel also have the right and duty to ask the Court to make rulings of law, because only by making an objection can a lawyer request and obtain a ruling from me on the admissibility of the evidence. There may be legal objections to or motions made to strike certain answers or testimony. All those questions of law must be decided by me. You are to disregard the fact that an objection was made and sustained or overruled or that conferences took place. These are matters of law and, although you may have been curious about them, you should not consider them. You should not show any prejudice against an attorney, or the attorney's client, because the attorney objected to the admissibility of evidence, asked for a conference out the hearing of the jury, or asked the Court for a ruling on the law.

As I have already said, my rulings on the admissibility of evidence do not indicate any opinion about the weight or effect of such evidence. You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence. If, however, I instruct you to disregard anything that is said, then you must follow that instruction and pay no attention to it in your deliberations. The fact that, at other times, I may comment during the trial or ask questions of witnesses does not indicate any feeling of mine about the facts one way or the other. Any feeling I may have indicated is to be disregarded. My comments are intended only to clarify the issue at hand, and even if I had feelings regarding an issue, it is only your judgment of the evidence that exclusively governs.

The rulings I make during the trial are not any indication of my views on what your decision should be. You are expressly to understand that this Court has no opinion as to the verdict you should render in this case.

My role, as the Judge, is to instruct you on the law that you are to apply to the facts as you find them. You, as jurors, are bound to accept my instructions on the law even if you feel that the law should be different from what I say it is. Also, if anyone has stated a legal principle that is different from any that I state to you in my instructions, it is my instructions that you must follow. You should not single out any one instruction or any one word or phrase in an instruction as alone stating the law, but you should consider the instructions as a whole.

O'Malley, Grenig & Lee, <u>Federal Jury Practice and Instructions</u>, § 101.01 Opening Instructions (6th ed. 2014) (modified).

## JOINT PROPOSAL – <u>PRETRIAL NO. 7</u>
## (IMPORTANCE OF IMPARTIALITY)

It is basic to the administration of any system of justice that the decision on both the law and the facts is made fairly and honestly. All parties to a civil lawsuit are equal before the Court and are equally entitled to a fair trial. Therefore, you must make fair and impartial decisions to arrive at a just verdict.

This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations of life.  The Companies being sued in the case are entitled to the same fair trial at your hands as a private individual. All persons, including corporations, partnerships, unincorporated associations, governmental entities and other organizations, stand equal before the law, and are to be dealt with as equals in a court of justice.

Under your oath as jurors, you are to be guided solely by the evidence (or lack of evidence) presented during the trial, as well as the applicable law, without regard to your feelings, positive or negative, for any party or attorney, and without bias or prejudice. All parties are entitled to the same fair and conscientious consideration. No party is entitled to any favor or special consideration. If you let sympathy or bias interfere with your clear thinking, then there is a risk that you will not arrive at a just verdict.

Hon. Engelmayer, <u>Diaz v. Diaz</u>, 14-cv-4716-PAE (S.D.N.Y. Feb. 3, 2016); Devitt, Blackmar and Wolff § 71.04, as modified.

## JOINT PROPOSAL –<u>PRETRIAL NO. 8</u>
## (BURDEN OF PROOF)

I will now explain some basic principles that will, I believe, help you to analyze some of the evidence you are about to hear. As this is a civil case, each of the Plaintiffs has the burden of proving each of her claims by a preponderance of the evidence. If one or both of the Plaintiffs fails to prove each element of a claim by a preponderance of the evidence, you should find for Defendants with respect to one or both of the Plaintiffs, on that claim.

To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence shows that the fact is more likely true than not true. It does not mean the greater number of witnesses or the greater length of time taken by either side. The phrase refers to the quality of the evidence, that is, its persuasiveness, weight, and effect that it has on your minds. In determining whether a claim has been proven by a preponderance of the evidence, you may consider the relevant testimony of all the witnesses, regardless of which side may have called them to testify, and all the relevant exhibits received in evidence regardless of who may have introduced them.

The concept of a preponderance of the evidence is often illustrated with the idea of scales. You put on one side all the credible evidence favoring the Plaintiffs and on the other side all the credible evidence favoring the Defendants. If Plaintiffs' tray outweighs Defendants' evidence, they have sustained their burden of proof by a preponderance of the evidence.

But if the scales are evenly balanced or they tip in Defendants' favor, you must find for Defendants. Remember, each Plaintiff has the burden of proof on her claims, while Defendant have the burden of proof on their affirmative defenses.

12

In determining whether a claim or defense has been proved by a preponderance of the evidence in this case, you may—unless otherwise instructed—consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have introduced them.

Some of you have no doubt heard of the term "proof beyond a reasonable doubt." That is the standard of proof that must be used in a criminal trial.  Plaintiffs in civil cases do not have to satisfy that requirement, and you should put it out of your mind.

Adapted from Devitt, Blackmar & Wolff, <u>Federal Jury Practice  and Instructions</u> (4th Ed. 1987), § 72.01; <u>Ostrowski v. Atlantic Mut. Ins. Companies</u>, 968 F.2d 171, 187 (2d Cir. 1992); Instruction of Hon. Richard M. Berman, <u>Lane v. Collins & Aikman Floorcoverings Inc.</u>, 00 Civ. 3241.

## JOINT PROPOSAL –<u>PRETRIAL NO. 9</u>
### (EVIDENCE, GENERALLY)

In determining the facts, you must rely upon your own perception and recollection of the evidence. What is evidence? Evidence consists of the sworn testimony of the witnesses (regardless of who has called them), and the exhibits that have been received into evidence (regardless of who may have introduced them into evidence). By contrast, what counsel may say in their opening statements, questions, and objections, as well as what they may say in their closing arguments, is *not* evidence. Also, anything that I have said or may say about the facts, as well as anything you have heard outside the courtroom, is *not* evidence.

You should bear in mind that a *question* put to a witness is *never* evidence; it is only the *answer* that is evidence. At times, a questioner may have incorporated into a question a statement that assumed certain facts to be true and asked the witness if the statement was true. If the witness denied the truth of a statement, and if there is no evidence in the record proving that assumed fact to be true, then you may not consider it simply because it was contained in a question. For example, asking whether a witness took some particular action on a particular day does not mean that that witness did that on the particular day.

You also may not consider any answer that I direct you to disregard or any answer that I direct be stricken from the record and ignored by you. Also, if certain testimony is received for a limited purpose, then you must follow the limiting instructions that I give you.

Exhibits that have been marked for identification are not evidence unless they have been received in evidence by the Court. Materials showed to a witness only to refresh a witness's memory are also not evidence.

Arguments made by the attorneys are not evidence. If your recollection of the facts differs from the statements made by attorneys in their arguments, then it is your recollection that controls.

14

Also, the fact that I may have commented during the course of the trial or asked questions of witnesses does not indicate any feeling of mine about the facts or the credibility of any witness. I have no such feelings, and my comments were intended only to clarify the issue at hand. You should draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or any party because of any comment, question, or instruction of mine. It is for you alone to decide the credibility of the witnesses and the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

Lastly, anything that you may have seen or heard when the Court was not in session is not evidence. You are to decide the case solely on the evidence that is presented to you in this courtroom.

Hon. Leonard B. Sand, et al., <u>Modern Federal Jury Instructions</u>, Instruction 74-1 What Is and Is Not Evidence (2014) (modified).

**JOINT PROPOSAL –<u>PRETRIAL NO. 10</u>**

**( DIRECT AND CIRCUMSTANTIAL EVIDENCE)**

As I have said, you will hear and see evidence in this case. That evidence can be testimony from a witness or it can be in the form of documents and other exhibits that have been "received into evidence."

There are two kinds of evidence: direct and circumstantial.

Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally experienced through his or her own senses; in other words, something seen, felt, touched, heard or tasted. Direct evidence also includes a document which states a fact. For example, if a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. Direct evidence may also be in the form of an exhibit, such as a written statement by one of the parties or its employees.

Even with direct witness testimony and documents, you still must consider the "credibility" and "weight" of the evidence, and I will explain more about credibility and weight shortly. For now, please remember that you are permitted to disbelieve the witness's testimony if you do not find the witness credible, that is, if you do not find the witness believable. Even if you believe a particular witness or validity of a document, you may assign the document little, substantial, or some other "weight."

Plaintiffs are not required to produce direct evidence of Defendants' discrimination.

Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other facts. Here is an example of circumstantial evidence: Suppose that in this courtroom there were no windows so you could not see what the weather was like outside, and when you came in this morning it was a fine, sunny day. We go ahead with the trial for two or three hours and then the

courtroom door opens and in comes a person wearing a dripping raincoat and carrying a dripping umbrella. You cannot see or hear what the weather is like outside, but from your observation of this person with the dripping raincoat and umbrella, you may draw an inference as to what has happened to the weather outside. This is an example of circumstantial evidence. It consists of circumstances which by common experience one may reasonably infer an ultimate fact sought to be established.

This example of circumstantial evidence is also an example of what the law means when it speaks of inferring one fact from another. An inference is the deduction or conclusion that reason and common-sense prompt a reasonable mind to draw from facts that have been proven by the evidence. Not all logically possible conclusions are legitimate or fair inferences. Only those inferences to which the mind is reasonably led or directed are fair inferences from direct or circumstantial evidence in the case. Whether or not to draw a particular inference is of course a matter exclusively for you, as are all determinations of fact.

Circumstantial evidence is of no less value than direct evidence; the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict be based on a preponderance of all evidence presented. "Preponderance of the evidence," as I explained earlier, simply means that something is "more likely than not" and is the standard applied in a civil trial such as this.

You are to consider only the evidence in the case. However, in your consideration of the evidence you are not limited to the bald statements of the witnesses. In other words, you are not limited solely to what you see and hear as witnesses testify. You are permitted to draw, from facts which you find have been proven or stipulated to, such reasonable inferences as seem justified in the light of your experience. You can find from the circumstances, the timing, the statements, and

your own common sense that Plaintiffs have proven by the preponderance of the evidence that

their race was a motivating factor in the decision to terminate them or you may find that Plaintiffs'

have not proven that their race was a motivating factor.

Adapted from Devitt, Blackmar & Wolff, Federal Jury Practice  and Instructions (4th Ed. 1987),
§71.04; Preliminary Instruction No. 1.4, The Honorable John L. Kane, Jr., District of Colorado,
Jury Instruction Book; Instructions of Hon. Richard M. Berman, Da Silva v. Kinsho Int'l Corp.,
97 Civ. 5030; Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions (4th Ed. 1987),
§§ 72.03 and 72.04 (as modified).

**JOINT PROPOSAL –<u>PRETRIAL NO. 11</u>**

**( (WEIGHT AND CREDIBILITY OF WITNESSES)**

How should you appraise or weigh the testimony that has been presented? It is part of your job to decide how believable — that is, how credible — you find each witness's testimony to be. How do you determine credibility? The answer is that you use your common sense. There is no magic formula by which you can evaluate testimony. You should use all of the tests for truthfulness that you would use in determining matters of importance to you in your everyday life.

Your determination of the credibility, by which we mean the believability, of a witness very largely depends upon the impression that witness made upon you as to whether or not the witness was giving an accurate version of what happened. You, as jurors, are the sole judges of both the credibility or believability of the witnesses and of the weight their testimony deserves. You may be guided by the conduct of the witness or by the manner in which the witness testifies. You may consider the character of the testimony given, or evidence contrary to the testimony given. You may also consider the witness's relationship, if any, to the controversy or to a plaintiff or defendant, the manner the witness might be affected by the verdict, or the witness's bias or impartiality. You should consider whether the testimony is supported or contradicted by other credible evidence.

Consider the witness's ability to observe the matters as to which he or she has testified, and whether the witness impresses you as having an accurate recollection of these matters. Consider the strength or weakness of the witness's recollection as viewed in light of all the testimony and attendant circumstances in the case and the reasonableness of the witness's statements. Remember to use your common sense, good judgment, and life experience.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimonies of different witnesses, may or may not cause you to discredit such testimony. Two or more persons

witnessing an incident or a transaction may see or hear it differently; innocent mis- recollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

I am not giving you an all-inclusive list. You may consider any factor that you believe bears upon a witness's credibility. You may, in short, accept or reject any portion of a witness's testimony. If, however, you decide to accept a witness's testimony, after considering it in light of all the evidence in this case, then you may give it whatever *weight*, if any, you find it deserves. The *weight* of the evidence is not determined by the *number* of witnesses testifying as to the existence or nonexistence of any fact. You may find the testimony of a smaller number of witnesses as to any fact is more credible than testimony of a larger number of witnesses to the contrary.

The question really is, how did the witness impress you? Did the witness's version appear straightforward and candid, or did the witness try to hide some of the facts? Is there a motive of any kind to testify falsely or to shade the testimony offered? In other words, you shall attempt to "size the person up," in common language, just as you would do in any important matter when you are trying to determine whether a person is being truthful, candid, and straightforward.

When you walk into a courtroom as jurors you do not leave your common sense, your good judgment, or your experiences in life behind you. You carry those experiences and common sense with you into the jury box and into the jury room during your deliberations.

Please remember, however, that you may *not* use your experience and common sense to *"fill in"* or *"create"* evidence that does not exist. You use your experience and common sense only to draw reasonable inferences from proven facts or to weigh and evaluate the evidence, or lack of evidence, provided during the trial.

One thing you should consider is any bias, hostility or affection that a witness may have shown for or against a party. It is your duty to consider whether the witness has permitted any such bias to color his or her testimony: If you find that it has, then you should view the witness's testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

You should also consider any other interest or motive that the witness may have in cooperating with a particular party, as well as any interest the witness may have in the outcome of the case. Interest in the outcome of the case creates a motive to testify falsely and may sway a witness to testify in a way that advances his or her own interests. Therefore, you should accept the testimony of an interested witness with great care. Keep in mind, though, that it does not automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter how strong their interest in the outcome of the case, would not testify falsely. It is for you to decide, based on your own perceptions and common sense, to what extent, if at all, the witness's interest has affected his or her testimony.

Additional factors you should consider are: the opportunity the witness had to see, hear and know the things about which he or she testifies; the accuracy of the witness's memory; the witness's candor or lack of candor; the witness's intelligence; the reasonableness of the witness's testimony; and the testimony's consistency or lack of consistency with other credible testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of the witness's demeanor, the explanations given, and all of the other evidence in the case. Always remember that you should use your common sense, your good judgment, and your own life experience.

If you find that any witness has willfully testified falsely to any material fact (that is, to an important matter), then the law permits you to disregard the entire testimony of that witness based

upon the principle that someone who testifies falsely about one material fact is likely to testify falsely about everything. You are *not required*, however, to consider such a witness as *totally unworthy of belief*. You may accept so much of the witness's testimony as you deem true and disregard what you feel is false.

It is quite legitimate for an attorney to try to attack the credibility of a witness; however, you are the sole arbiters of the facts, and therefore you must decide for yourselves which witnesses you will believe, what portion of their testimony you will accept, and what weight you will give to that testimony. By the processes I have just described you, the sole judges of the facts, decide which of the witnesses to believe, what portion of the any witness's testimony to accept, and what weight, if any, to give to any witness's testimony.

Adapted from Devitt, Blackmar & Wolff, Federal Jury Practice and Instructions (4th Ed. 1987), §73.01. FJIP §§ 104:43, 104:54, 105:01, 105:04, 105:10; PJI § 1:41; Jury Instructions in *Delville v. Firmenich Inc.*, No. 08 Civ. 10891, ECF No. 118, at 149-85 (Nov. 13, 2013).

## JOINT PROPOSAL – <u>PRE-DELIBERATION NO. 12</u>
### (INTRODUCTION)

Members of the jury, you have now heard all of the evidence in the case, as well as the final arguments of the parties. We have reached the point where you are about to undertake your final function as jurors. You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict in this case.

I am now going to instruct you on the substantive law to be applied to Plaintiffs' specific claims. You should consider each claim separately and determine whether either Plaintiff has proved the elements of each claim by a preponderance of the evidence.

On these legal matters, you must take the law as I give it to you. If any attorney or witness has stated a legal principle different from any that I tell to you in my instructions, it is my instructions that you must follow.

You are to consider these instructions together as a whole; in other words, you are not to isolate or give undue weight to any particular instruction.

I am now going to tell you about the law that you will have to apply to the facts as you find them. At the beginning of the trial, I gave you preliminary instructions on the law, primarily on general legal principles. Now I will give you the final instructions.

**Source:** Jury Instructions in *Delville v. Firmenich Inc.*, No. 08 Civ. 10891, ECF No. 118, at 149-85 (Nov. 13, 2013).

## PROPOSAL – <u>PRE-DELIBERATION NO. 13</u>
## <u>(STATEMENT OF CLAIMS)</u>

**PLAINTIFF'S PROPOSAL**

I am now going to briefly identify the claims that are at issue in this case. In stating these claims, I express no opinion of the facts, because you are the sole judges of the facts. If I should inaccurately or insufficiently state any particular fact, then you are to disregard that, as you alone are the judges of the facts. You will consider all of the facts, the testimony from the stand, the physical facts and all legitimate inferences.

Plaintiffs assert claims of discrimination against the corporate Defendants Gap, Inc., and Banana Republic, LLC, under (i) Title VII of the Civil Rights Act of 1964, (ii) Section 1981 of the Civil Rights Act of 1866, and (iii) the New York State Human Rights Law. Specifically, Plaintiffs assert that Defendants treated them differently than their non-African American co-workers and terminated them because they were African American. Defendants deny that either Plaintiff was discriminated against and assert that they both were terminated from their employment for legitimate, non-discriminatory reasons, i.e. altering their subordinate employees' time records.

Plaintiffs assert claims of discrimination against the individual defendants, under (i) Section 1981 of the Civil Rights Act of 1866, and (ii) the New York State Human Rights Law. Specifically, under Section 1981, Plaintiffs assert that Ms. Borowski, Ms. Russo and Mr. Jean-Louis should be found liable for discrimination because they were personally involved in the discriminatory activity. Personal involvement is satisfied by (i) direct participation in the discriminatory termination, or (ii) gross negligence in the supervision of subordinates who committed the wrongful acts, or (iii) failure to take action upon receiving information that constitutional violations are occurring. Under NYSHRL, Plaintiffs assert that Ms. Borowski, Ms. Russo and Mr. Jean-Louis should be found liable for discrimination because they (i) had the

authority to terminate Plaintiffs and (ii) participated in the conduct giving rise to the discrimination. Specifically, Plaintiffs assert that individual Defendants Toni Lynn Borowski, Michelle Russo and Gregoire Jean – Louis had authority to effectuate the decision to terminate Plaintiffs from their employment, which was motivated by the fact that Plaintiffs are African American, and actually participated in this decision.

An alternative theory of individual liability under the NYSHRL is aiding and abetting unlawful discrimination. In order to establish that an individual defendant is liable for aiding and abetting race discrimination, Plaintiffs must prove by a preponderance of the evidence that the individual was aware of and condoned discriminatory conduct. Plaintiffs assert a claim for aiding and abetting discrimination against individual Defendants Michelle Russo, Toni Lynn Barowski, and Gregoire Jean-Louis under the New York State Human Rights Law. Specifically, Plaintiffs assert that each of them aware of and condoned Defendants discriminatory conduct by "aiding, abetting, inciting, compelling, or coercing" Plaintiffs' termination on the basis of their race.

Plaintiffs also assert a claim for retaliation against the corporate Defendants Gap, Inc., and Banana Republic, LLC, under (i) Title VII of the Civil Rights Act of 1964, (ii) Section 1981 of the Civil Rights Act of 1866, and (iii) the New York State Human Rights Law. Specifically, Plaintiffs assert that they were retaliated against because Defendants terminated their employment after they raised a complaint against Defendant Michelle Russo for comments she made during a Field Leadership Conference, which Plaintiffs contend were race-based and harassing. With respect to Plaintiffs' retaliation claims, Defendants assert that Plaintiffs were terminated solely because Plaintiffs altered their subordinate employees' time records, which took time and money away from those employees, and which was discovered after Plaintiffs complained about Defendant

Michelle Russo. Defendants also assert that the person who made the decision to terminate Plaintiffs' employment did not rely on any input from Defendant Michelle Russo and that there is no evidence connecting Defendants' decision to terminate Plaintiffs with their complaint against Defendant Russo. Plaintiffs also assert claims of retaliation against the individual Defendants Michelle Russo, Toni Lynn Barowski, and Gregoire Jean-Louis, under (i) Section 1981 of the Civil Rights Act of 1866, and (ii) the New York State Human Rights Law.

Finally, Plaintiffs also assert a claim for aiding and abetting retaliation against individual Defendants Michelle Russo, Toni Lynn Barowski, and Gregoire Jean-Louis under the New York State Human Rights Law. Specifically, Plaintiffs assert that each of them participated in Defendants' retaliation against Plaintiffs by "aiding, abetting, inciting, compelling, or coercing" their unlawful termination. In order to establish that an individual defendant is liable for aiding and abetting retaliation, Plaintiffs must prove by a preponderance of the evidence that the individual was aware of and condoned the retaliatory conduct. Plaintiffs assert a claim for aiding and abetting retaliation against individual Defendants Michelle Russo, Toni Lynn Barowski, and Gregoire Jean-Louis under the New York State Human Rights Law. Specifically, Plaintiffs assert that each of them was aware of and condoned Defendants retaliatory conduct by "aiding, abetting, inciting, compelling, or coercing" Plaintiffs' termination in retaliation for their complaint regarding Ms. Russo. Individual Defendants Michelle Russo, Toni Lynn Barowski, and Gregoire Jean-Louis assert that they did not aid, abet, incite, compel, or coerce Plaintiffs termination and that there is no evidence of underlying discrimination by any Defendant.

It is your responsibility to decide, based on the evidence presented to you and my instructions on the law, whether or not Plaintiffs have proven any of their claims against Defendants by a preponderance of the evidence.

26

This, ladies and gentlemen, is a very general overview of the parties' respective positions. It is not meant to be an exhaustive summary of the evidence that you are being asked to consider. That is why, in giving you an overview of the claims of the parties, I have stated them only in the most general way.

I am not attempting to state each and every claim and defense raised by the parties in detail. You, as jurors, have heard the evidence in this case. You have heard the arguments of counsel. You will be able to supply any omissions or correct any inaccuracies in the statement of their claims. I will now instruct you on the law which you must apply in evaluating all of the parties' claims and defenses in this case.

**DEFENDANTS' PROPOSAL**

I am now going to briefly identify the claims that are at issue in this case. In stating these claims, I express no opinion of the facts, because you are the sole judges of the facts. If I should inaccurately or insufficiently state any particular fact, then you are to disregard that, as you alone are the judges of the facts. You will consider all of the facts, the testimony from the stand, the physical facts and all legitimate inferences.

Plaintiffs assert claims of discrimination against all Defendants under (i) Title VII of the Civil Rights Act of 1964, (ii) Section 1981 of the Civil Rights Act of 1866, and (iii) the New York State Human Rights Law. Specifically, Plaintiffs assert that Defendants treated them differently than their non-African American co-workers and terminated them because they were African American. Defendants deny that either Plaintiff was discriminated against and assert that they both were terminated from their employment for legitimate, non-discriminatory reasons, when

Defendants discovered that both Plaintiffs altered their subordinate employees' time records, which took time and money away from those employees.

Plaintiffs also assert a claim for retaliation against all Defendants under (i) Title VII of the Civil Rights Act of 1964, (ii) Section 1981 of the Civil Rights Act of 1866, and (iii) the New York State Human Rights Law.  Specifically, Plaintiffs assert that they were retaliated against because Defendants terminated their employment after they raised a complaint against Defendant Michelle Russo for comments she made during a Field Leadership Conference, which Plaintiffs contend were race-based and harassing. With respect to Plaintiffs' retaliation claims, Defendants assert that Plaintiffs were terminated solely because Plaintiffs altered their subordinate employees' time records, which took time and money away from those employees, and which was discovered after Plaintiffs complained about Defendant Michelle Russo. Defendants also assert that the persons who made the decision to terminate Plaintiffs' employment did not rely on any input from Defendant Michelle Russo and that there is no evidence connecting Defendants' decision to terminate Plaintiffs with their complaint against Defendant Russo.

Finally, Plaintiffs also assert a claim for aiding and abetting against individual Defendants Michelle Russo, Toni Lynn Borowski, and Gregoire Jean-Louis under the New York State Human Rights Law. Specifically, Plaintiffs assert that each of them actively participated in the discrimination and retaliation against Plaintiffs. With respect to Plaintiffs' aiding and abetting claims, individual Defendants Michelle Russo, Toni Lynn Borowski, and Gregoire Jean-Louis assert that they did not discriminate against Plaintiffs and that there is no evidence of underlying discrimination by any Defendant.

It is your responsibility to decide, based on the evidence presented to you and my instructions on the law, whether or not Plaintiffs have proven any of their claims against Defendants by a preponderance of the evidence.

This, ladies and gentlemen, is a very general overview of the parties' respective positions. It is not meant to be an exhaustive summary of the evidence that you are being asked to consider. That is why, in giving you an overview of the claims of the parties, I have stated them only in the most general way.

I am not attempting to state each and every claim and defense raised by the parties in detail. You, as jurors, have heard the evidence in this case. You have heard the arguments of counsel. You will be able to supply any omissions or correct any inaccuracies in the statement of their claims. I will now instruct you on the law which you must apply in evaluating all of the parties' claims and defenses in this case.

**JOINT PROPOSAL – <u>PRE-DELIBERATION NO. 14</u>**

**(SECTION 1981, TITLE VII, AND NYSHRL RACIAL DISCRIMINATION CLAIMS)**

As you have heard, this is an action to recover damages for employment discrimination. The law prohibits employment discrimination based on race. In this case, plaintiffs claim that they were unlawfully terminated because of their race in violations of three laws: 42 U.S.C. § 1981, known as "Section 1981," Title VII of the Civil Rights Act of 1964, known as "Title VII," and N.Y. Exec. Law. § 296, known as the "New York State Human Rights Law."

In order for either or both Plaintiffs to recover under a theory of unlawful race discrimination under Title VII and the New York State Human Rights Law, they must prove by a preponderance of the evidence that their race was a motivating factor in the decision to terminate their employments. A "motive" is defined as "something that causes a person to act." Thus, Plaintiffs must prove that their being African American was one of the factors that caused them to be terminated from their employment.

There can be more than one motivating factor in any decision. Therefore, Plaintiffs need not prove that race was the only reason for the decision to terminate them. Race is a motivating factor if it made a difference, even in part, on whether Plaintiffs would have been terminated.

In order for either or both Plaintiffs to recover under a theory of unlawful race discrimination under Section 1981, the standard is slightly different, as they must prove by a preponderance of the evidence that their race was a but-for cause of or the but-for factor in the decision to terminate their employments, meaning that Plaintiffs would not have been terminated if it were not for their race. But-for does not mean, however, that race was the only or sole cause of the termination decision. Rather, the decision to terminate Plaintiffs could have had multiple causes, and so long as Plaintiffs' race was the "but-for" cause, meaning but for their race they

would not have been terminated, Plaintiffs would be entitled to prevail as their Section 1981 discrimination claim.

In deciding whether race was a motivating factor in the termination decision, you must first consider whether either or both Plaintiffs have established that their terminations occurred under circumstances giving rise to an inference of discrimination. Circumstances that give rise to an inference of discrimination could include an employer treating a plaintiff less favorably than an employee outside her protected group who is similarly situated in all material respects. An employee is similarly situated to a coworker if they were subject to the same performance evaluation and discipline standards and engaged in comparable conduct. Other circumstances giving rise to an inference of discrimination include the employer's criticism of the plaintiff's performance in ethnically degrading terms, its invidious or offensive comments about others in the employee's protected group, or the sequence of events leading to the adverse action in question.

If you find that Plaintiffs have failed to prove that their terminations occurred under circumstances giving rise to an inference of race discrimination, you will find for Defendants on this issue. If you find that Plaintiffs have proven that their terminations occurred under circumstances giving rise to an inference of discrimination, then you must proceed to consider the reason Defendants have given for terminating Plaintiffs and whether it is legitimate and non-discriminatory. Here, the Defendants have alleged that Plaintiffs were terminated because an investigation concluded that Plaintiffs altered the time records of their subordinate employees, which resulted in those employees not being paid for the time they worked.

If you find that the reason given by the Defendants for terminating Plaintiffs is legitimate and non-discriminatory, then you must consider whether Plaintiffs have established by a preponderance of the evidence that the reason offered by Defendants was not really the reason for

their termination and that their race was a motivating factor, in whole or in part, in the decision. A showing that employees who are similarly situated in all material respects but who belong to a different protected category, or in these circumstances, a different race, received more favorable treatment can serve as evidence that the legitimate, non-discriminatory reason offered by the employer for its adverse job action was pretext for discrimination or not the real reason for the employer's termination decision.

If you find that Plaintiffs have failed to prove that the reason offered by the Defendants was not the real reason they were terminated, then you will find for the Defendants on this issue. If you find that Plaintiffs have proven that the reason offered by Defendants was not the real reason but rather a pretext for discrimination, then you will find for Plaintiffs as to their Title VII and New York State Human Rights Law discrimination claims and you should proceed to determine the amount of damages as to these claims.

Further, if you find in favor of Plaintiffs as to their Title VII and New York State Human Rights Law discrimination claims - that is that Plaintiffs' race was a motivating factor in the decision to terminate their employment - you will need to then consider whether either or both Plaintiffs have established, by a preponderance of the evidence, that, but-for their race, they would not have been terminated, meaning that Plaintiffs would not have been terminated if they were a different race. If Plaintiffs have done so, then you will find for Plaintiffs as to their Section 1981 discrimination claims and you should proceed to determine the amount of damages as to this claim.

O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, § 171.75 (6th ed. 2014) (modified); 42 U.S.C. § 2000e-2(a); N.Y. Exec. Law § 296(1)(a); 42 U.S.C. § 1981; Kotcher v. Rosa & Sullivan Appliance Ctr., Inc., 957 F.2d 59, 62 (2d Cir. 1992); Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64-65 (1986); Clanton v. Schlegel Sys., No. 05-CV-6456T, 2007 U.S. Dist. LEXIS 28338, at * 7-8, 19-21 (W.D.N.Y. April 17, 2007); Abdu-Brisson v. Delta Airlines, 239 F.3d 456, 467 (2d Cir. 2001). East v. Roosevelt Union Free School Dist., No. CV 19-3709, 2020 U.S. Dist. LEXIS 138849, at * 21 (E.D.N.Y. July 31, 2020); Zann Kwan v. Andalex Grp.

LLC, 737 F.3d 834 (2d Cir. 2013); Hon. Halpern's summary judgment decision in <u>Manuel v. Gap, Inc.</u>, 19 Civ. 3617, at Dkt. No. 192.

**DEFENDANTS' PROPOSAL – <u>PRE-DELIBERATION NO. 15</u>**
**(DISCRIMINATION—DECISIONMAKERS & MEMBERS OF SAME GROUP)**

To succeed on their discrimination claims, Plaintiffs are not required to show that each and every person involved in the decision to terminate Plaintiffs' employment was motivated by the fact that they are African American. However, if you find that some of the decision makers were not motivated by the fact that Plaintiffs are African American, then Plaintiffs must prove by a preponderance of the evidence that those non-biased decision makers were influenced by a person whose decision to terminate Plaintiffs' employment was motivated by the fact that Plaintiffs are African American. If you find that Plaintiffs have failed to prove that the non-biased decision makers were influenced in their decision to terminate Plaintiffs by a person who was biased against Plaintiffs because they are African American, then you must find for Defendants.

Also, Plaintiffs do not need to prove that Defendants discriminated against every African American employee. However, the fact that the Defendants did not terminate or treat other African American employees less well creates an inference that Defendants were not biased against African Americans and that Plaintiffs being African American was not a motivating factor. But, if you find that Plaintiffs have proved by a preponderance of the evidence that their being African American motivated the decision makers to terminate their employment, you must find in Plaintiffs' favor.

**Source**: *Marosan v. Troicare Coll.*, 2015 U.S. Dist. LEXIS 43082, at *50 (W.D.N.Y. Feb. 5, 2015); (citing *Rose v. New York City Bd. Of Educ.*, 257 F.3d 156, 162 (2d Cir. 2001)); *Sadju v. SUNY College at Brockport*, 310 F. Supp. 2d 506 (W.D.N.Y. 2004); *Adams v. Canon USA, Inc.*, No. CIV 07-3512, 2009 WL 3064856, at *14 (E.D.N.Y. Sept. 22, 2009) (citing *Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 560 (2d Cir. 1997)).

**DEFENDANTS' PROPOSAL – <u>PRE-DELIBERATION NO. 16</u>**
**(DISCRIMINATION – STRAY REMARKS)**

Plaintiffs rely upon alleged remarks made to them as evidence of discrimination. In determining whether Defendants discriminated against Plaintiffs because they are African American, you can consider whether those who participated in the decision to terminate their employment made comments about or engaged in other conduct demonstrating bias against African Americans. You can also consider whether Plaintiffs were criticized using terms demonstrating bias against African Americans.

However, mere references to a person's race or random stray remarks about their race are not evidence of discrimination. Such statements must be reviewed in the context they are made.

Thus, in determining whether such statements evidence discrimination, you should consider, (1) who made the remark; (2) when the remark was made in relation to the employment decision to terminate Plaintiffs from their employment; (3) the content of the remark, that is, whether a reasonable person could view the remark as evidence of bias against African-Americans, and (4) the context in which the remark was made (*i.e.* whether it was made in relation to the decision-making process).

You may decide whether these stray remarks have any significance at all. However, it is important to know that isolated, sporadic, or ambiguous statements, even about a person's race, are not sufficient for Plaintiffs to show by a preponderance of the evidence that the decision to terminate them from their employment was because they are African American.

**Source**: *Cozzi v. Great Neck Union Free School Dist.*, 2009 U.S. Dist. LEXIS 74305 (E.D.N.Y. Aug. 21, 2009); *Hess v. ING USA Annuity & Life Ins. Co.*, 2008 U.S. Dist. LEXIS 11174 (E.D.N.Y. Feb. 14, 2008); *Hansberry v. Father Flanagan's Boys' Home*, 2004 U.S. Dist. LEXIS 26937 (E.D.N.Y. Nov. 28, 2004); *Campbell v. Alliance Nat'l Inc.*, 107 F. Supp. 2d 234(S.D.N.Y. 2000); *Henry v. Wyeth Pharms, Inc.*, 616 F.3d 134, 149 (2d Cir. 2010); *O'Connor v. Viacom, Inc./Viacom Int'l Inc.*, 1996 U.S. App. LEXIS 32986, 104 F.3d 356 (2d Cir. Dec. 16 1996); *Danzer v. Norden*

*Sys, Inc.*, 151 F.3d 50, 56 (2d Cir. 1998); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 667-68 (W.D.N.Y. 1992), *aff'd*, 995 F.2d 1147 (2d Cir. 1993); *Donaldson v. Merrill Lynch & Co.*, 794 F. Supp. 498, 505 (S.D.N.Y. 1992); *Parker v. Sheehan Mem'l Emergency Hosp.*, 1987 WL 15646, at *5-7 (W.D.N.Y. Aug. 10, 1987); *Tebbenhoff v. Electronic Data Sys. Corp.*, 2005 WL 3182952, at *2 (S.D.N.Y. Nov. 29, 2005), *aff'd* 244 F. App'x 382 (2d Cir. 2007).

**JOINT PROPOSAL -PRE-DELIBERATION NO. 18**

**( SECTION 1981, TITLE VII, AND NEW YORK STATE HUMAN RIGHTS LAW RETALIATION CLAIMS)**

Plaintiffs also seek to hold Defendants liable for unlawful retaliation that they allege they endured for engaging in protected activity. Section 1981, Title VII and the New York State Human Rights Law make it unlawful for an employer to retaliate against an employee who engaged in protected activity by "opposing" or "protesting" what the employee believes in good faith are the employer's violations of Section 1981, Title VII, and/or the New York State Human Rights Law. "Protected activity" includes "informal complaints to supervisors, instituting litigation, or filing a formal complaint." In determining employer liability for retaliation claims, courts look at the *retaliatory* conduct, **not** the underlying discrimination claims, so long as the Plaintiffs had a good faith belief in opposing what they reasonably believed to be discrimination. This means that Plaintiffs may be able to prove discrimination but not retaliation, or retaliation but not discrimination; or neither, or both.

Plaintiffs allege that the decision to terminate their employment was in retaliation for their complaint of what they believed were discriminatory comments by Defendant Michelle Russo during the Field Leadership Conference. To establish their claim, Plaintiffs must demonstrate by a preponderance of the evidence that: (1) they engaged in protected activity; (2) Defendants were aware of that protected activity; (3) Defendants took an adverse employment action contemporaneous with or subsequent to their protected activity; and (4) a causal connection exists between their protected activity and the adverse employment action, *i.e.*, proof that the desire to retaliate was the but-for cause of the termination decision. If you determine that Plaintiffs have failed to prove any of the four elements, then you must return a verdict for the Defendants on all retaliation claims.

Specifically, Plaintiffs must prove, by a preponderance of the evidence, that retaliation or a retaliatory motive was a "but-for" cause of the adverse action, in this case, their terminations. However, Plaintiffs need not prove, by a preponderance of the evidence, that this "but-for" reason was the only cause of the decision to terminate their employments. Rather Plaintiffs have to prove by a preponderance of the evidence that the terminations would not have occurred in the absence of the retaliatory motive. Put another way, you must determine whether Plaintiffs would have been terminated if they had not complained but everything else had been the same.

Causation can be proven either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly though evidence of retaliatory animus against the plaintiff by the defendants.

Causation, for purposes of Plaintiffs' Title VII retaliation claims, can also be proven by showing that the retaliatory motive of a person who is not an ultimate decision maker as to the termination decision nonetheless had and exercised significant influence over a decision maker and employer and caused them to decide to terminate Plaintiffs, such as when an employee is fired by a supervisor who herself has no retaliatory motive but who has been manipulated or influenced by a subordinate who does have such a motive to make the termination decision. This is known as the "Cat's Paw Theory of Liability."

If you find that Plaintiffs have failed to prove that their terminations were caused by or occurred under circumstances giving rise to an inference of retaliation, you will find for Defendants on this issue. If you find that Plaintiffs have proven that there was a causal connection between their terminations and their protected activities, you must then proceed to consider the reason Defendants have given for terminating Plaintiffs and whether it is legitimate and non-

retaliatory.  If this finding of causation was determined *solely* based on the Cat's Paw Theory of Liability, then you will find in favor of Defendants as to Plaintiff's Section 1981 and New York State Human Rights Law retaliation claims.

Defendants contend that the discovery of Plaintiffs' misconduct, which occurred after Plaintiffs made a complaint about Defendant Michelle Russo, was the reason that Plaintiffs were terminated. Defendants also contend that Plaintiffs failed to prove their retaliation claim because Defendant Toni Lynn Borowski and non-party Greg Gonzalez-Pollick, the persons who made the decision to terminate Plaintiffs' employment, were not influenced by and did not rely on anything Defendant Michelle Russo said or did in making their decision to terminate Plaintiffs' employment.

Defendants do not have to prove - and it is not up to you to decide - whether they made the "right" decision in this case. The sole issue is whether Plaintiffs have demonstrated that retaliation was the "but for" reason for terminating their employment. Specifically, Plaintiffs must show by a preponderance of the evidence that they would not have been terminated from their employment but for the fact they complained about Defendant Michelle Russo.

If you find that Plaintiffs have not met this burden, you do not need to deliberate any further on the retaliation claims and you must find in favor of Defendants on all retaliation claims.

Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a)(1); N.Y. Exec. Law § 296(7); 42 U.S.C. § 1981; Littlejohn v. City of New York, 795 F.3d 297 (2d Cir. 2015); Bermudez v. City of New York, 783 F. Supp. 2d 560, 575 (S.D.N.Y. 2011); Conklin v. Cnty. of Suffolk, 859 F. Supp. 2d 415, 424 (E.D.N.Y. 2012);  Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000); Giscombe v. N.Y.C. Dep't of Educ., 39 F. Supp. 3d 396, 401 (S.D.N.Y. 2014); Kwan v. Andalex Grp., *LLC*, 737 F.3d 834, 846 (2d Cir. 2013); Vasquez v. Empress Ambulance Serv., 835 F.3d 267, 272, 275-76 (2d Cir. 2016); Edwards v. Rochester Inst. Of Tech., 794 F. App'x 65, 67 (2d Cir. 2019)*;* Hon. Halpern's summary judgment decision in Manuel v. Gap, Inc., 19 Civ. 3617, at Dkt. No. 192. *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338(2013); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57-59 (2006); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 513-16 (1993); *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 146-9 (2d Cir. 2010); *Galdieri-Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998): *Torres v. Pisano*, 116 F.3d 625, 639 (2d Cir.) (1997); *Wanamaker v.*

*Colombian Rope Co.*, 108 F.3d 462 (2d Cir. 1997); *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170 (2d Cir. 1996).

**DEFENDANTS' PROPOSAL – <u>PRE-DELIBERATION NO. 19</u>**

**(PLAINTIFFS' SUBJECTIVE BELIEF)**

Plaintiffs' own subjective belief that they were discriminated against or retaliated against is not sufficient to meet their burden of proof. Nor is sympathy for Plaintiffs a proper consideration in analyzing their claims. The burden in this case is always on Plaintiffs to prove by a preponderance of the evidence that they were terminated from their employment because they are African American or because they complained about Defendant Russo. If Plaintiffs fail to meet their burden, you must find in favor of Defendants.

**Source**: *Coleman v. Bd. of Educ.*, 2002 U.S. Dist. LEXIS 619, at *23-24 (S.D.N.Y. Jan. 16, 2002), *aff'd,* 45 Fed. Appx. 29 (2d Cir. 2002); *Berhanu v. N.Y.S. Ins. Fund*, 1999 U.S. Dist. LEXIS 15548, at *16-17 (S.D.N.Y. Sept. 28, 1999), *aff'd*, 13 F. App'x. 30 (2d Cir. 2001).

**DEFENDANTS' PROPOSAL – <u>PRE-DELIBERATION NO. 20</u>**
**(NON-DISCRIMINATORY REASON)**

Defendants have asserted that Plaintiffs were not terminated because they are African American or because they complained about Ms. Russo. Rather Defendants assert that Plaintiffs were terminated for legitimate non-discriminatory reasons. Specifically, that an impartial investigation revealed that Plaintiffs fraudulently altered their subordinate employees' time records, which resulted in those employees not being paid for time they worked. If you find that Plaintiffs were terminated because of these non-discriminatory factors, you must find in favor of Defendants.

However, remember that Plaintiffs at all times have the burden of proving that their race was a motivating factor in the termination decision, and with respect to their retaliation claim, the burden of proving that the fact they complained about Ms. Russo was the "but-for" cause of their termination. Defendants do not have the burden of proving that they did not discriminate or that they did not retaliate.

In determining (1) whether the decision to terminate Plaintiffs' employment was motivated by the fact that they are African American and (2) whether their complaint was the but-for cause of their termination, you should consider whether the explanations given by Defendants for the termination were pretextual, *i.e.,* not worthy of belief. You should consider the reasonableness or lack of reasonableness of Defendants' explanations for the termination and any evidence that the reasons are not likely.

In making your determination, you may compare Defendants' treatment of Plaintiffs to their treatment other General Managers and Associate Store Managers.  However, you should only compare Plaintiffs to those employees who were similarly situated to them. To be similarly situated, the other employees with whom Plaintiffs attempt to compare themselves must be

similarly situated in all material respects, including length of employment, performance, conduct, etc.

**Source**: *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Renz v. Grey Advertising, Inc.*, 135 F.3d 217 (2d Cir. 1997); *Fields v. New York State Office of Mental Retardation and Developmental Disabilities*, 115 F.3d 116 (2d Cir. 1997), *corrected op. reported at* 1997 U.S. App. LEXIS 19794 (2d Cir. May 23, 1997); *Fisher v. Vassar College*, 114 F.3d 1332 (2d Cir. 1997) (*en banc*); Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997); Jury Instructions in *Delville v. Firmenich Inc.*, No. 08 Civ. 10891, ECF No. 118, at 149-85 (Nov. 13, 2013).

**DEFENDANTS' PROPOSAL – <u>PRE-DELIBERATION NO. 21</u>**
**(BUSINESS JUDGMENT)**

In determining whether or not Defendants' explanation for its decision to terminate Plaintiffs' employment was a legitimate non-discriminatory and non-retaliatory reason, you do not have to believe that the decision was wise, correct or fair. Defendants, as an employer, are entitled by law to use their own, subjective business judgment and make decisions for any lawful reason. You may not substitute your own judgment for that of Defendants, even if you personally disapprove of Defendants' actions and even if you would have acted differently under the circumstances shown by the evidence.

The only issues for you to determine are (1) whether Plaintiffs have proven by the preponderance of the evidence that the decision to terminate their employment was motivated by the fact that Plaintiffs are African American and (2) whether Plaintiffs have proven by a preponderance of the evidence that the fact that they complained about Defendant Russo was the but-for cause of their termination. Defendants are entitled to make an employment decision for any reason - a good reason, a bad reason, or no reason at all, as long as it was not an unlawful reason. The fact that a decision may be based on Defendants' subjective assessment of Plaintiffs' misconduct does not make the decision discriminatory.

**Source**: Based upon: Jury Instructions in *Delville v. Firmenich Inc.*, No. 08 Civ. 10891, ECF No. 118, at 149-85 (Nov. 13, 2013); *Dister v. Continental Group, Inc.*, 859 F.2d 1108 (2d Cir. 1988); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981); *Weinstock v. Columbia Univ.*, 224 F.3d 33 (2d Cir. 2000); *Davis v. State Univ. of N.Y.*, 802 F.2d 638, 641 (2d Cir. 1986) ("The employer need not prove that the person promoted had superior objective qualifications, or that it made the wisest choice, but only that the reasons for the decision were nondiscriminatory."); *De la Concha v. Fordham Univ.*, 5 F. Supp.2d 188, 194 (S.D.N.Y. 1998) ("In satisfying its burden of production, a defendant 'need not prove that it made the wisest choice, but only that the reasons for its decisions were non-discriminatory.'") *aff'd*., 173 F.3d 843 (2d Cir. 1999); *Lloyd v. WABC-TV*, 879 F. Supp. 394, 402 n.5 (S.D.N.Y. 1995) ("Defendants need not show that the other candidate was more qualified than Plaintiff. Under Title VII, 'the employer has discretion to choose among equally qualified

44

candidates, provided the decision is not based upon unlawful criteria.'"); *see also Thornley v. Penton Publ.*, 104 F.26, 29-30 (2d Cir. 1997).

**PROPOSAL – <u>PRE-DELIBERATION NO. 22</u>**

**(AIDING AND ABETTING UNDER NYSHR –**
**TERMINATION AND RETALIATION)**

In addition to naming their former employer as defendants in this case, Plaintiffs have also named Michelle Russo, Toni Lynn Borowski, and Gregoire Jean-Louis, as individual defendants. Plaintiffs allege that the Individual Defendants participated in the discriminatory and/or retaliatory decision to terminate their employment and are therefore individually liable for aiding and abetting the discrimination and/or retaliation.

To be liable for aiding and abetting, an individual employee need not have supervisory or hiring and firing power. An individual can be held liable for aiding and abetting allegedly unlawful discrimination or retaliation by the employer even where the individual's actions serve as the predicate for the employer's liability, so long as the employer's conduct has also been found to be unlawful under the New York State Human Rights Law.

**PLAINTIFFS' PROPOSAL**

If you determine that Defendants are liable under the New York State Human Rights Law for discrimination and/or retaliation, *and* that any Individual Defendant aided, abetted, incited, compelled or coerced the decision to discriminatorily and/or retaliatorily terminate either or both of Plaintiff's employment, by a preponderance of the evidence, then you will find that Individual Defendant individually liable for aiding and abetting violations of the New York State Human Rights Law.

**DEFENDANTS PROPOSAL**

***Aiding and Abetting Discrimination***

To establish individual liability for aiding and abetting discrimination, Plaintiffs must first prove by a preponderance of the evidence that the decision to terminate their employment was

motivated by the fact that they are African American. If you find that Plaintiffs have not proved by a preponderance of the evidence that the decision to terminate them was motivated by their race, then Plaintiffs' claims against the individual defendants for discrimination fail and you must find each of the individual defendants not liable for aiding and abetting discrimination.

If you find that Plaintiffs have proven by a preponderance of the evidence that the decision to terminate Plaintiffs from their employment was motivated by the fact that Plaintiffs are African American, then you must consider whether each of the individual defendants is liable for aiding and abetting the discrimination.

An individual defendant may be held liable under the aiding and abetting provision of the New York State Human Rights Law if Plaintiff proves by a preponderance of the evidence that  he or she actually participated in the conduct giving rise to the alleged unlawful discrimination claim, *i.e,* the decision to terminate Plaintiff's employment; that is that the individual defendant was one of the decision makers.

To establish that an individual defendant is liable for aiding and abetting race discrimination, Plaintiffs must prove by a preponderance of the evidence that:

(1) the individual defendant participated in the decision to terminate Plaintiffs' employment, meaning that the individual defendant was one of the decision makers; and

(2) the individual defendant's actions were motivated by the fact that Plaintiffs are African American.

If you find that Plaintiff has not proved either of the above by a preponderance of the evidence for an individual defendant, you must find that individual defendant not liable for aiding and abetting discrimination.

*Aiding and Abetting Retaliation*

To establish individual liability for aiding and abetting retaliation, Plaintiffs must first prove by a preponderance of the evidence that their complaint about Ms. Russo was the but-for case for their termination, meaning they would not have been terminated if they had not complained. If you find that Plaintiffs have not proved by a preponderance of the evidence that their complaint about Ms. Russo was the but for cause of their termination, then Plaintiffs' claims against the individual defendants for retaliation fail and you must find each of the individual defendants not liable for aiding and abetting retaliation.

If you find that Plaintiffs have proven by a preponderance of the evidence that Plaintiffs' complaint about Ms. Russo was the but for cause of their termination, then you must consider whether each of the individual defendants is liable for aiding and abetting the retaliation.

To establish aiding and abetting liability for the individual defendants for retaliation, Plaintiffs must prove by a preponderance of the evidence that:

(1) the individual defendant participated in the decision to terminate Plaintiffs' employment, meaing that the individual defendant was one of the decision makers; and

(2) Plaintiffs' complaint about Ms. Russo was the but for cause of the individual defendant's actions.

If you find that Plaintiff has not proved either of the above by a preponderance of the evidence for an individual defendant, you must find that individual defendant not liable for aiding and abetting retaliation.

**Source**: *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313, 1317 (2d Cir. 1995); *Cerrato v. Durham*, 941 F. Supp. 388, 396-97 (S.D.N.Y. 1996); *Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 542 (1984); *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62 (2d Cir. 2000); N.Y. Exec. Law §§ 296(6); N.Y.C. Admin. Code § 8-107(6); Townsend v. Benjamin Enters, Inc. 679 F.3d 41, 57 (2d Cir. 2012); *Feingold v. New York,* 366 F.3d 138, 157 (2d Cir. 2004).

**JOINT PROPOSAL – <u>PRE-DELIBERATION NO. 24</u>**
**(DAMAGES GENERALLY)**

I am about to instruct you as to the proper measure of the damages that you will be considering. The fact that I am giving you these instructions is not an indication of my view as to which party you should find for in the case or whether any damages are appropriate at all. Instructions as to the measure of damages are given only for your guidance in the event that you should find in favor of Plaintiffs in accordance with the other instructions that I have given you. Whether damages are to be awarded in this case, and if so, in what dollar amount, are matters for you, the jury, to decide in accordance with my instructions. If you do not find that damages should be awarded, you should not take into consideration any potential attorneys' fees or court costs, which will be decided by the Court if necessary.

In determining the amount of damages, if any, that should be awarded, you must use sound discretion in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You are instructed that damages are not presumed, nor may they be based upon speculation or guess work; they must be proven. You must also understand that the burden is on Plaintiffs to prove by a preponderance of the evidence each item and element of damage that each of them claims. Unless such item or element claimed is proven by a preponderance of the evidence, Plaintiffs cannot recover damages.

You may not award damages based on sympathy, speculation or guesswork. On the other hand, the law does not require that the plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as circumstances permit. Your award must be fair and just.

The purpose of the law is to make the plaintiffs whole — to put the plaintiffs in the same position they would have been in had there been no discrimination or retaliation at Gap/Banana Republic.

Thus, if you find that either or both Plaintiffs have satisfied her burden of proving by a preponderance of the evidence that one or more Defendants discriminated and/or retaliated against her, only then may you consider the issue of what damages Defendants should pay each Plaintiff. On the other hand, if you decide that either or both Plaintiffs are not entitled to prevail on her claims, you need go no further.

I remind you that Plaintiffs have brought the following claims: and you must render your verdict as to each claim as follows:

      i.        discrimination under Title VII and the New York State Human Rights Law;

      ii.       discrimination under Section 1981;

      iii.      retaliation under Section 1981, Title VII and the New York State Human Rights Law; and

      iv.      aiding and abetting under the New York State Human Rights Law

You must render a verdict on each claim and, on the claims where you find either or both Plaintiffs have proven their case by a preponderance of the evidence, calculate the amount of damages for each of those claims with respect to each Plaintiff, if applicable.

4 Modern Federal Jury Instructions, Inst. 77-01 (2007), as modified; O'Malley, Vol. 3C § 74.02, § 171.90, as modified; 42 U.S.C. Section 2000-5(e); Albemarle Paper Co. v. Moody, 422 U.S. 405, 417-18 (1975); Carrero v. New York City Hous. Auth., 890 F.2d 569, 579-81 (2d Cir. 1989); Watson v. E.S. Sutton, Inc., No. 02 Civ. 2739, 2005 WL 2170659 at *16 (S.D.N.Y. 2005); Koyen v. Consol. Edison Co., 560 F. Supp. 1161, 1164 (S.D.N.Y. 1983); Sogg v. Am. Airlines, Inc., 193 A.D.2d 153, 163, 602 N.Y.S.2d 21, 24 (1st Dept. 1993). Jury Instructions in *Delville v. Firmenich Inc.*, No. 08 Civ. 10891, ECF No. 118, at 149-85 (Nov. 13, 2013). Devitt, Blackmar and Wolff, § 104.06; Richey, C., Manual on Employment Discrimination and Civil Rights Actions in the Federal Courts.

## PRE-DELIBERATION NO. 25
### (ECONOMIC DAMAGES)

PLAINTIFFS' PROPOSAL

If you should find that either or both Plaintiffs are entitled to a verdict on one or more of her claims, you may award either or both Plaintiff only such sums as will reasonably compensate her for the damage you find she has sustained and will sustain as a direct cause of Defendants' actions or inactions.

### Back Pay

If you conclude that Defendants violated Plaintiffs rights under one or more of their claims, and that Plaintiffs have lost wages or benefits as a result, you will first decide the amount of "back pay" to which Plaintiffs are entitled, if any. At all times, it is each of Plaintiffs' burden to prove their respective back pay damages. Back pay is an amount equal to the pay that they would have earned had they not been discriminated or retaliated against.

This calculation includes the compensation (base pay plus any raises, bonuses, or other employee benefits) that you find Plaintiff would have received if they had not been subject to discrimination and/or retaliation.

You will calculate the amount of back pay starting from the date Plaintiffs were terminated through the date of judgment.  You should also include any anticipatory pay raises, step increases, cost of living increases, fringe benefits, and other compensation increases or payments necessary to make Plaintiff whole in determining your total award of back pay damages.

The fact that Plaintiffs may have earned compensation through other work after their terminations does not cut off their right to recover back pay, if the income they received is less

that what they would have received had they remained employed at Banana Republic. Such earnings at subsequent employers are interim earning that will mitigate or offset Plaintiffs' overall recovery of back pay damages from the total calculation for what they would have earned if they had been employed at Banana Republic through the date of judgment.

## Front Pay

If you find either or both plaintiffs have proved, by a preponderance of the evidence, that as a result of Defendants' unlawful actions, they have suffered a reduction in their capacity to earn money in the future, you may award damages for the loss of future earnings – this is called "front pay." In other words, Plaintiffs may recover damages based on the future impact Defendants' conduct will have on their wages and other benefits they would have earned but for the discrimination and/or retaliation to which they were subjected. An award of front pay projects from the date of termination into the future.

Unlike computing back pay, where the length of time from the illegal conduct to the trial is certain, estimating front pay requires predicting the length of time a plaintiff would have worked for the defendant and will work at alternative employment. To calculate Plaintiffs' front pay damages, you should consider their likely earnings from Banana Republic but for the discrimination or retaliation for the period they could reasonably be expected to have worked for Banana Republic. From that amount subtract Plaintiffs' projected earnings from alternative employment.

Any award you make for the reduction of plaintiffs' earning capacity in the future should be determined on the basis of their earnings before their termination and any other circumstances you find would have a bearing on Plaintiffs' earning capacity. The appropriate measure of front pay damages is the amount of lost compensation and fringe benefits from the date of your verdict

until the date when Plaintiffs can reasonably be expected to earn the amount of which they claim to have been deprived. Fringe benefits include, but are not limited to, the following items: (1) any pension contribution made by the employer; (2) any insurance payments made by the employer; and (3) any vacation pay, sick leave bonus, or stock options.

Plaintiffs have a continuing duty to mitigate their damages going forward; that is, they must continue to make reasonable efforts to seek alternative employment where they could earn a higher rate of pay elsewhere. After the time you conclude when Plaintiffs should have found suitable alternative employment, their rights to front pay ends.

**DEFENDANTS' PROPOSAL**

If you should find that either or both Plaintiffs are entitled to a verdict on one or more of her claims, you may award either or both Plaintiff only such sums as will reasonably compensate her for the damage you find she has sustained and will sustain as a direct cause of Defendants' actions or inactions.

**<u>Back Pay</u>**

If you conclude that Defendants violated Plaintiffs rights under one or more of their claims, and that Plaintiffs have lost wages or benefits as a result, you will first decide the amount of "back pay" to which Plaintiffs are entitled, if any. At all times, it is each of Plaintiffs' burden to prove their respective back pay damages. Back pay is an amount equal to the pay that they would have earned had they not been discriminated or retaliated against.

This calculation includes the compensation (base pay plus any raises, bonuses, or other employee benefits) that you find Plaintiff would have received if they had not been subject to discrimination and/or retaliation. You will calculate the amount of back pay for each Plaintiff starting with the date they were terminated up to the earlier of the following dates: (1) the date

each Plaintiff obtained other employment making at least the same compensation Plaintiff would have received if she were still employed by Defendants; (2) the date Plaintiff decided to stop working for reasons unrelated to the termination of her employment with Defendants; and (3) the present. I will refer to the earlier of those dates as the "Back Pay End Date".

To determine the amount of back pay for each Plaintiff, you must make several calculations:

1. First, determine the amount of base salary that each Plaintiff would have earned had she worked from May 28, 2018, to the Back Pay End Date.

2. Then, determine the value of the employee benefits that each Plaintiff would have earned had they remained employed by Defendants until the Back Pay End Date.

3. Then, subtract the amount of salary and employee benefits that each Plaintiff received working at any subsequent jobs between the date each was terminated and the Back Pay End Date.

If the Back Pay End Date is the present, then you must consider whether Plaintiffs are entitled to front pay.

**<u>Front Pay</u>**

"Front pay" covers monetary damages for future lost wages and benefits. If the Back Pay End Date is earlier than the present date, then Plaintiffs are not entitled to Front Pay.

If the Back Pay End Date is the present, you may consider awarding Plaintiffs Front Pay. The appropriate measure of front pay damages is future wages and benefits that each Plaintiff would reasonably have earned from Defendants had Plaintiff not been terminated from the date of your verdict through a reasonable period of time in the future. From this figure you must subtract the amount of earnings and benefits each Plaintiff will receive from other employment during that time. Plaintiffs have the burden of proving these damages by a preponderance of the evidence.

Plaintiffs have a continuing duty to mitigate their damages going forward; that is, they must continue to make reasonable efforts to seek alternative employment where they could earn a higher rate of pay elsewhere. After the time you conclude when Plaintiffs should have found suitable alternative employment, their rights to front pay ends.

Rojas v. Manhattan Jeep Eagle, No. 97-9009, 1998 U.S. App. LEXIS 12677, at *2 (2d Cir. Apr. 20, 1998); Whittlesey v. Union Carbide Corp.,742 F.2d 724, 729 (2d Cir. 1994); Dunlap-McCuller v. Riese Org., 980 F.2d 153, 159 (2d Cir. 1992). S*ee* O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, 5th ed. Thomson West §§ 170.61; 104.5; Third Circuit Model Civil Jury Instructions, Section 5.4.4 (June 2023); Pattern Jury Instructions, Seventh Circuit Model Jury Instructions, Section 1.21 (Matthew Bender & Co. 2013).

**JOINT PROPOSAL – PRE-DELIBERATION NO. 26**
**(MITIGATION OF DAMAGES)**

Any person who claims damages as a result of an alleged wrongful act of another has a duty under the law to use reasonable diligence under the circumstances to "mitigate," or minimize, those damages. Plaintiffs each had the duty to take advantage of reasonable opportunities so as to reduce or minimize their loss of earnings by undertaking reasonable efforts to secure alternative employment that is compatible with each of their abilities, aptitudes and general health, if any such employment exists. If you find that either Plaintiff failed to take reasonable steps to secure alternative employment, their recovery, if any, for a loss of past or future earnings must be reduced by the amount, if any, that you, the jury, find that Plaintiff(s) can or could have earned had they made a reasonable and good faith effort to mitigate her damages.

Bear in mind that the question of whether either Plaintiff acted "reasonably" with respect to the mitigation of damages is one for you to decide, as sole judges of the facts. Although the law will not allow an injured plaintiff to sit idly by when presented with an opportunity to mitigate, this does not imply that the law requires an injured plaintiff to exert themselves unreasonably or to incur unreasonable expense in an effort to mitigate.

In deciding whether to reduce either or both of the Plaintiffs' damages due to some failure to mitigate, you must weigh all the evidence in light of particular circumstances of the case, using sound discretion in deciding whether Defendants have satisfied their burden of proving that either or both of the Plaintiffs' conduct was not reasonable. Plaintiffs' failure to make a reasonable effort to minimize damages does not prevent all recovery, but it does prevent recovery of such damages as might have been avoided.

**Source**: Based upon Bender, Matthew, *Modern Federal Jury Instructions* § 77.07 (2015); *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 53-55 (2d Cir. 1998).

**JOINT PROPOSAL – <u>PRE-DELIBERATION NO. 27</u>**
**(EMOTIONAL DISTRESS DAMAGES)**

Plaintiffs are seeking compensatory damages (also called emotional distress damages) based on their emotional pain and suffering, including feelings of depression, anxiety, and/or humiliation and mental anguish that they have suffered as a result of Defendants' alleged unlawful conduct.  In order to receive compensatory damages, Plaintiffs must prove that they have suffered emotional distress as a result of being discriminated and/or retaliated against.  Each Plaintiff can prove this through her own testimony.

**Defendants' Proposed Additional Language (in italics)**

*If that testimony is not supported by a treating physician or health provider, then the emotional distress they suffered was "garden variety." Garden variety emotional distress is defined as ordinary and commonplace emotional distress, that which is simple or usual.  Garden variety emotional distress is the generalized insult, hurt feelings, and lingering resentment that does not involve a significant disruption of the person's work life and rarely involves more than a temporary disruption in the person's personal life.  It is the distress that any healthy, well-adjusted person could be expected to feel as a result of the circumstances.  Garden variety emotional distress damages are generally considered nominal. Neither Plaintiff is automatically entitled to any emotional distress damages.*

You may also consider examples of what you evaluate to be emotional harm, including any evidence of tearfulness, effects on sleep, family relationships and sociability, resulting fears or worry, anxiety, anger, chest pain, panic attacks, sleeplessness, nightmares, and other types of reactions about which you may have heard testimony. No evidence of the monetary value of such intangible things as pain and suffering need be introduced into evidence.

**Defendants' Proposed Additional Language (in italics)**

*However, each of the Plaintiffs must still prove that Defendants discriminated or retaliated against her and that she suffered emotional distress as a result before being entitled to these damages. Vague or nebulous evidence is an insufficient basis for an award of damages for emotional distress. Rather, there must be substantial evidence of emotional injury resulting from the unlawful conduct. Thus, if you find that either of the Plaintiffs' alleged emotional distress was caused by something other than Defendants' conduct, such as personal problems or pre-existing conditions, then she is not entitled to recover compensatory damages for emotional distress from Defendants. If you find that only part of either Plaintiffs' emotional distress was caused by Defendants' conduct, then you should only award damages for that part to her.*

There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.

There is no requirement that a claim of emotional distress be supported by proof of expenses, lost earnings, or specifically measurable damages. There is also no requirement that a claim of emotional distress be supported by evidence from a medical or mental health professional who treated Plaintiff.

Additionally, you can distinguish the level of emotional distress Plaintiffs may be feeling today from the levels of emotional distress they allege they suffered during and the period immediately following being discriminated and retaliated against by Defendants. In other words, you can award compensatory damages based on the severe emotional anguish Plaintiffs may have suffered immediately after any of Defendants' acts, even though they may not still be suffering at the same level today.

**Defendants' Proposed Additional Language  (in italics)**

*If you decide to award damages for emotional distress, you must use your judgment to decide a reasonable amount based on the evidence and your common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. You may not award damages based on sympathy, speculation, or guess work.  It is difficult generally to arrive at a precise evaluation of actual damages for emotional distress.  The damages that you award must be fair and reasonable; not inadequate or excessive.*

3C Fed. Jury Prac. & Instr. § 171:90 (6th ed.), 3C Fed. Jury Prac. & Instr. § 171:90; L. Sand et al., 4 Federal Pattern Jury Instructions, 87-33; 42 U.S.C. §1981(A)(b)(3); Patrick S. Brady v. Wal-Mart Stores, Inc., 531 F.3d 127 (2d Cir. 2008); Lore v. City of Syracuse, 670 F.3d 127 (2d Cir. 2012); Turley v. ISG Lackawanna, Inc., 774 F.3d 140 (2d Cir. 2014); Osorio v. Source Enterprises, Inc., No. 05 CIV. 10029 (JSR), 2007 WL 683985, at *5 (S.D.N.Y. Mar. 2, 2007); Cross v. New York City Transit Auth., 417 F.3d 241 (2d Cir. 2005); Thorsen v. Cty. of Nassau, 722 F. Supp. 2d 277 (E.D.N.Y. 2010); New York City Transit Auth. v. State Div. of Human Rights, 78 N.Y.S.2d 207, 216, 573 N.Y.S.2d 49, 54 (1991); Sogg v. Am. Airlines, Inc., 193 A.D.2d 153, 163, 603 N.Y.S.2d 21, 27 (1st Dept. 1993), motion for leave to appeal denied, 83 N.Y.2d 754 (1994). O'Malley, K., Grenig, J. and Lee., Federal Jury Practice and Instructions, Thomson West §170.42 (5th ed. 2012); *EEOC v. First Wireless Group,* 2007 U.S. Dist. LEXIS 11893, *15-16 (E.D.N.Y. Feb. 20, 2007); *Ruhlmann v. Ulster Cty. Dep't of Soc. Servs.*, 194 F.R.D. 445, 449 n.6 (N.D.N.Y. 2000); *Rainone v. Potter,* 388 F. Supp. 2d 120, 122 (E.D.N.Y. 2005); *Abel v. Town Sports International*,  2012 U.S. Dist. LEXIS 183444, *50 (S.D.N.Y. 2012) (holding that Plaintiff's sparse testimony, standing alone, is generally insufficient to sustain an award of emotional distress damages.); *Dejesus v. Village of Pelham Manor*, 282 F. Supp. 2d 162, 177 (S.D.N.Y. 2003) ("[E]motional distress damages can not be established by mere subjective statements by the plaintiff, without corroboration, when the plaintiff does not indicate any physical manifestations of her distress."); *Annis v. County of Westchester*, 136 F.3d 239, 249 (2d Cir. 1998); *Hiller v. County of Suffolk*, 199 F.R.D. 101 (E.D.N.Y. 2001); *Blakey v. Continental Airlines, Inc.*, 992 F. Supp. 731, 736 n. 3 (D.N.J. 1998) (lack of evidence that plaintiff's work environment had a serious contribution to her emotional distress prevented recovery); *Timms v. Rosenblum,* 713 F. Supp. 948, 955 (E.D. Va. 1989) (noting the "wisdom" of precluding recovery for mental anguish stemming from the litigation process); *Thoreson v. Penthouse Int'l*, 583 N.Y.S.2d 213, 215 (1st Dep't 1992), *aff'd*, 591 N.Y.S.2d 978 (1992).

## <u>PRE-DELIBERATION NO. 28</u>

### (PUNITIVE DAMAGES)

**PLAINTIFFS' PROPOSAL**

Plaintiffs seek an award of punitive damages. Punitive damages are awarded to punish a defendant for wrongful or egregious unlawful conduct. Their purpose is to deter or discourage others from engaging in similar wrongful or egregious unlawful conduct in the future. Punitive damages are intended to protect the community and to be an expression of the jury's indignation at a defendant's misconduct.

Punitive damages may be awarded if you find that either or both Plaintiffs have shown – by a preponderance of the evidence – that Defendants engaged in intentional discrimination and acted with malice or reckless indifference to Plaintiffs' rights.

A defendant can be found to have acted with malice or reckless indifference to a plaintiff's rights where it knew that its conduct violated a law prohibiting discrimination or acted with reckless disregard of the law. Direct evidence that a defendant acted with knowledge that its conduct violated the law is not required, however. Instead, the requisite state of mind may be inferred from the circumstances. For example, company policies or training in racial discrimination are sufficient to allow you to infer that Defendants acted with malice.

There is no exact rule by which to determine the amount of punitive damages. You may fix such an amount as you find, in your sound judgment and discretion, the character of defendant's unlawful conduct calls for.

**DEFENDANTS' PROPOSAL[1]**

Plaintiffs seek an award of punitive damages under 1981 and Title VII. Punitive damages are awarded to punish a defendant for wrongful or egregious unlawful conduct. Punitive damages are an extraordinary sanction, available only under aggravated circumstances, to penalize a party for engaging in notably reprehensible conduct. Their purpose is to deter or discourage others from engaging in similar wrongful or egregious unlawful conduct in the future. Punitive damages are intended to protect the community and to be an expression of the jury's indignation at a defendant's misconduct. The law does not generally look with favor upon punitive damages. It is for you to determine whether such damages should be awarded, based on the instructions I am about to give you.

Punitive damages may be awarded if you find that either or both Plaintiffs have shown – by a preponderance of the evidence – that Defendants engaged in intentional discrimination and acted with malice or reckless indifference to Plaintiffs' protected rights under the law. The terms "malice" and "reckless indifference" pertain not to an awareness that the defendant is engaging in discrimination, but rather to the defendant's knowledge that it may be acting in violation of the law.

A defendant can be found to have acted with malice or reckless indifference to a plaintiff's rights where it knew that its conduct violated a law prohibiting discrimination or acted with reckless disregard of the law. In other words, Plaintiffs must establish that Defendants

---

[1] Defendants' *motion in limine* requests that punitive damages be bifurcated from the liability phase of the trial. Accordingly, Defendants' proposed jury charges concerning punitive damages relate only to the punitive damages phase of the trial. Defendants object to the issue of punitive damages going to the jury at the same time it considers liability. The offering of this proposed jury instruction here does not waive Defendants' objection. Rather, the proposed instruction is only being offered now in the event the Court determines that the issues should go to the jury simultaneously.

discriminated or retaliated against them in the face of a perceived risk that their actions violated the law.

There is no exact rule by which to determine the amount of punitive damages. You may fix such an amount as you find, in your sound judgment and discretion, the character of defendant's unlawful conduct calls for.

In some cases, punitive damages may be awarded for the purpose of punishing a defendant for its wrongful conduct and to deter others from engaging in similar wrongful conduct. However, an employer may not be held liable for punitive damages because of discriminatory acts on the part of its managerial employees where those acts by such employees are contrary to the employer's own good faith efforts to comply with the law by implementing policies and programs designed to prevent such unlawful discrimination in the workplace.

So, an award of punitive damages would be appropriate only if you find for Plaintiffs and then further find that a high management official acted with malice or reckless indifference to Plaintiffs' protected rights under the law. In other words, an award of punitive damages would be appropriate in this case only if you also find: (1) that a high management official of Defendants personally acted with malice or reckless indifference to Plaintiffs' legally protected rights; and (2) that Defendants did not act in a good faith attempt to comply with the law by adopting practices, policies and procedures designed to prohibit such discrimination in the workplace. However, if you find that Defendants established that it had written policies prohibiting discrimination and that it made a good faith effort to provide instruction and training to its employees concerning the policies, you may not award punitive damages.

You should bear in mind that such extraordinary damages may be awarded only in connection with Plaintiffs' discrimination or retaliation claims that you find unanimously that

Plaintiffs have proven by a preponderance of the evidence.  Further, punitive damages may be allowed, based on the standards I have just described, only if you first unanimously award Plaintiffs a verdict for back pay or emotional distress damages.  You should also bear in mind not only the conditions under which the law permits an award of punitive damages to be made, but also the requirement of the law that the amount of such extraordinary damages, if awarded, must be fixed with calm discretion and sound reason and must never be either awarded or fixed in any amount because of sympathy or bias or prejudice with regard to any party to the case.

Kolstad v. American Dental Ass'n, 527 U.S. 526, 527, 538 (1999); Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 137 (2d Cir. 2008); Farias v. Instructional Sys., Inc., 259 F.3d 91, 101 (2d Cir. 2001); Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376, 385 (2d Cir. 2001); Osorio v. Source Enterprises, Inc., No. 05 Civ 10029 (JSR), 2007 WL 683985, at *5 (S.D.N.Y. Mar. 2, 2007). O'Malley, K., Grenig, J. and Lee. Hon. W. 3C Federal Jury Practice and Instructions, West, §172.74 (5th ed. 2001) as modified; *Kolstad v. ADA*, 527 U.S. 526 (1999); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *Farais v. Instructional Sys.*, 259 F.3d 91, 101-02 (2d Cir. 2001).

<u>**PRE-DELIBERATION NO. 29**</u>

**AMOUNT OF PUNITIVE DAMAGES**

**PLAINTIFFS' PROPOSAL**

In determining the amount of punitive damages to award Plaintiffs, you must keep in mind that punitive damages are not intended to, and may not be used to, compensate them for their injuries. Instead, the purpose of punitive damages is to punish a defendant and to deter similar conduct in the future. Accordingly, if you award punitive damages, you should consider Gap and Banana Republic's net worth and the impact of paying that award. A punitive damages award should be limited to the amount reasonably necessary to achieve the goals of punishment and deterrence and should not be so high as to result in the financial ruin of the corporate defendants.

In calculating a punitive damages award, you should consider, among other things,

i.   the nature and reprehensibility of the Defendants' conduct, including the character of the wrongdoing and the Defendants' awareness of what harm the conduct caused or was likely to cause;

ii.  the amount of time the Defendants engaged in reprehensible conduct; and

iii. the Defendants' financial condition and the impact your punitive damages award will have on the Defendants.

**DEFENDANTS' PROPOSAL**[2]

In determining the amount of punitive damages to award Plaintiffs, if any, you must keep in mind that punitive damages are not intended to, and may not be used to, compensate them for their injuries. The amount of punitive damages must be in proportion to the evidence that Defendants' conduct was purposeful, or the damages will be excessive. If you award punitive damages, they must be separately stated in your verdict.

Furthermore, punitive damages must bear a reasonable relationship to Plaintiffs' actual injury. However, there is no simple way to link punitive to compensatory damages. In determining a reasonable relationship to the actual injury, you must consider all relevant factors.

These may include:

1.    The degree of reprehensibility of Defendants' conduct;

2.    The degree to which any purported harm is physical rather than economic; and

3.    The disparity between the actual harm suffered by Plaintiffs and the punitive damages award.

3C Fed. Jury Prac. & Instr. § 171:94 (6th ed.) (modified); TVT Records v. Island Def Jam Music Grp., 257 F. Supp. 2d 737, 745 (S.D.N.Y. 2003); Kauffman v. Maxim Healthcare Servs., Inc., 509 F. Supp. 2d 210, 217 (E.D.N.Y. 2007); BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 580 (1996); Osorio v. Source Enterprises, Inc., No. 05 Civ 10029 (JSR), 2007 WL 683985, at *5 (S.D.N.Y. Mar. 2, 2007). O'Malley, K., Grenig, J. and Lee. Hon. W. 3C Federal Jury Practice and Instructions, West, §172.74 (5th ed. 2001) as modified; Kolstad v. ADA, 527 U.S. 526 (1999);

---

[2] Defendants' *motion in limine* requests that punitive damages be bifurcated from the liability phase of the trial. Accordingly, Defendants' proposed jury charges concerning punitive damages relate only to the punitive damages phase of the trial. Defendants object to the issue of punitive damages going to the jury at the same time it considers liability. The offering of this proposed jury instruction here does not waive Defendants' objection. Rather, the proposed instruction is only being offered now in the event the Court determines that the issues should go to the jury simultaneously.

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003); *Farais v. Instructional Sys.*, 259 F.3d 91, 101-02 (2d Cir. 2001).

## **JOINT PROPOSAL – PRE-DELIBERATION NO. 30**

### **(DAMAGES – COSTS OF LITIGATION)**

I instruct you not to include in any of your damages calculations the expenses, including attorney's fees, which Plaintiffs may have incurred in connection with this litigation.

## JOINT PROPOSAL – PRE-DELIBERATION NO. 31

### (Evidence- General Instruction)

You are to consider only the evidence in the case. The evidence in this case is the sworn testimony of the witnesses and the exhibits received in evidence.

During the trial, certain deposition testimony was read to you or, in the case of videotaped deposition testimony, played for you. Like the testimony you have heard in court, deposition testimony is sworn testimony that was given in response to questions asked by attorneys for the parties to the case. Deposition testimony should be considered, to the extent possible, in the same way as testimony that was given at the witness stand and should be judged as to credibility and weight in the same way.

Any testimony or other evidence that I have excluded, stricken, or told you to disregard, is not evidence and may not be considered by you in reaching your verdict.

Likewise, questions the parties' lawyers asked are not evidence. It is the witnesses' answers that are evidence, not the lawyers' questions. Arguments by the attorneys are not evidence because the attorneys are not witnesses. The arguments the lawyers have made in their opening statements, summations, and at other times, are intended only to help you understand the evidence and reach a verdict.

Finally, the statements or rulings that I have made are not evidence. Because you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to what the facts are or what the verdict should be. The ruling I have made during the trial are not indication of my views. Also, you should not draw any inferences from the fact that I may have, on occasion, asked certain questions to the witnesses. These questions were intended only to clarify or expedite proceedings, and they are not an indication of my view of the evidence. In short, if anything I have

said or done seemed to you to indicate an opinion relating to any matter you need to consider, you must disregard it.

It is for you alone to decide what weight, if any, should be given to the testimony and the exhibits received in evidence in this case.

**Source:** <u>FJIP</u> §§ 101:40, 101:44, 102:23, 102:45, 102:70, 102:71, 102:72, 102:73, 103:30, 103:33, 103:34, 104:20, 105:02; Jury Instructions in *Delville v. Firmenich Inc.*, No. 08 Civ. 10891, ECF No. 118, at 149-85 (Nov. 13, 2013).

## JOINT PROPOSAL – PRE-DELIBERATION NO. 32

### (Deliberations – Duty to Deliberate)

The most important part of this case, members of the jury, is the part that you as jurors are about to play as you deliberate on the issues of fact. It is for you, and you alone, to decide whether Plaintiffs have proven each of the elements of their claims by a preponderance of the evidence. I know you will judge the issues that have been presented to you according to the oath that you have taken as jurors. In that oath, you promised that you would well and truly try the issues in this case and render a true verdict. Your function is to weigh the evidence in the case and reach your decisions based solely on the evidence. Your duty is to decide the issues before you fairly and impartially, and to see that justice is done.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for yourself, but you should do so only after consideration of the case with your fellow jurors. Your verdict, and the answers to each question on the verdict form, must be unanimous. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without prejudice or favor towards either party, and adopt that conclusion which in your good conscience appears to be in accordance with the truth.

As you deliberate, please listen to the opinions of your fellow jurors and ask for an opportunity to express your own views. Every juror should be heard. No one juror should hold center stage in the jury room or control or monopolize the deliberations. You should all listen to one another with courtesy and respect. If, after stating your own view and after listening to your fellow jurors, you become convinced that your view is wrong, do not hesitate because of stubbornness or pride to change your view. On the other hand, do not surrender your honest

convictions and beliefs concerning the weight or effect of the evidence solely because of the opinions of your fellow jurors, because you are outnumbered or for the mere purpose of returning a verdict. Your final vote must reflect your conscientious belief as to how the issues should be decided. Your verdict must be unanimous.

**Source:** <u>FJIP</u> §§ 101:01, 103:50, 106:01, 106:16; Jury Instructions in *Delville v. Firmenich Inc.*, No. 08 Civ. 10891, ECF No. 118, at 149-85 (Nov. 13, 2013).

## JOINT PROPOSAL – PRE-DELIBERATION NO. 33

### (Deliberations – All Jurors Required for Deliberation)

You are not to discuss the case until all jurors are present. A collection of five, six, or even seven jurors together is only a gathering of individuals. Only when all eight jurors are present do you constitute a jury, and only then may you deliberate.

**Source:** Jury Instructions in *Delville v. Firmenich Inc.*, No. 08 Civ. 10891, ECF No. 118, at 149-85 (Nov. 13, 2013).

## JOINT PROPOSAL – PRE-DELIBERATION NO. 34

### (Deliberations – Duties of the Foreperson)

I am going to ask that you select a foreperson when you begin your deliberations. You should all vote on who will be the foreperson. The foreperson does not have any more power or authority than any other juror, and foreperson's vote or opinion does not count for any more than any other juror's vote or opinion.  The foreperson is merely your spokesperson to the Court. The foreperson will send out any notes for the Court, and when the jury has reached a verdict, he will notify _____, fill out and sign the verdict form, and give the verdict in open court.

**Source:** <u>FJIP</u> §§ 103:50; 106:05; Jury Instructions in *Delville v. Firmenich Inc.*, No. 08 Civ. 10891, ECF No. 118, at 149-85 (Nov. 13, 2013).

## JOINT PROPOSAL – PRE-DELIBERATION NO. 35

**(Deliberations – Right to Exhibits and Testimony / Communications with the Court)**

The exhibits will be sent to you in the jury room. If you want any of the testimony read back to you, that can be arranged. Keep in mind that we may not have a printed transcript and it is not always easy for the court reporter to locate the testimony that you might want, so be as specific as you can as to what witness and what portion of that witness's testimony you would like to hear.

Any communication with the Court should be made in writing, signed by your foreperson, and given to _____, who will be here in the courtroom while you deliberate. I will respond to any questions or requests you have as promptly as possible, either in writing or by having you return to the courtroom, so I can speak with you in person.

You are not to reveal the standing of the jurors—that is, the split of the vote—to anyone, including me, at any time during your deliberations. So do not ever indicate, in a note or otherwise, what the vote is or which way the majority is leaning or anything like that. Nobody outside the jury should know how the jury stands on any issue until a unanimous verdict is reached.

**Source:** FJIP §§ 101:20, 103:50, 104:55, 106:08; Jury Instructions in *Delville v. Firmenich Inc.*, No. 08 Civ. 10891, ECF No. 118, at 149-85 (Nov. 13, 2013).

## JOINT PROPOSAL – PRE-DELIBERATION NO. 36

### (Deliberations – Juror Notes)

If any of you took notes during the course of the trial, you should not show your notes to, or discuss your notes with, any other juror during your deliberations. Any notes you have taken are to be used solely to assist you. The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror. Finally, your notes are not to substitute for your recollection of the evidence in the case. If you have any doubt as to any testimony, you may request that the testimony be read back to you, as I mentioned earlier.

**Source:** FJIP §§ 101:15, 103:02; Jury Instructions in *Delville v. Firmenich Inc.*, No. 08 Civ. 10891, ECF No. 118, at 149-85 (Nov. 13, 2013).

<u>**JOINT PROPOSAL – PRE-DELIBERATION NO. 37**</u>

**(Impartiality and Persons Equal Before the Law)**

Under your oath as jurors, you are not to be swayed by sympathy. You are to be completely fair and impartial. You are to be guided solely by the evidence, or lack of evidence, in this case, without regard to the consequences of your decision. The crucial question you must ask yourselves as you sift through the evidence is whether the parties have proven the elements of their respective claims by a preponderance of the evidence.

It would be improper for you to consider in deciding the facts of this case any personal feeling you may have about the race, religion, national origin, sex, sexual orientation, disability or age of any party or witness, or any other such irrelevant factor. It would also be improper for you to consider any sympathy you may feel for an individual in a lawsuit.

You should consider and decide this case as a dispute between parties of equal standing in the community, of equal worth, and holding the same or similar situations in life. A corporation is entitled to the same fair trial as a private individual. All persons, including corporations and other organizations, stand equal before the law and are to be treated as equals.

**Source:** Jury Instructions in *Delville v. Firmenich Inc.*, No. 08 Civ. 10891, ECF No. 118, at 149-85 (Nov. 13, 2013).

## JOINT PROPOSAL – PRE-DELIBERATION NO. 38

### (Deliberations – Verdict Form)

As I said before, when you retire to deliberate, you should choose a foreperson. The foreperson will receive a verdict form on which to record your verdict. You will see that the verdict form has various questions for you to answer in the order in which they appear. When the foreperson has completed the verdict form, the foreperson must sign their name, and I will ask each of the eight jurors to sign your names on the verdict form. And then the verdict form will be marked as a Court Exhibit.

**Source:** FJIP §§ 103:50; 106:05; Jury Instructions in *Delville v. Firmenich Inc.*, No. 08 Civ. 10891, ECF No. 118, at 149-85 (Nov. 13, 2013).

## JOINT PROPOSAL – PRE-DELIBERATION NO. 39

### (Deliberations – Closing)

Finally, all litigants stand equal in this courtroom. All litigants stand equal before the bar of justice. All litigants stand equal before you. Your duty is to decide between these parties fairly and impartially and to see that justice is done in accordance with your oath as jurors.

I thank you for your time and attentiveness.

**Source:** Jury Instructions in *Delville v. Firmenich Inc.*, No. 08 Civ. 10891, ECF No. 118, at 149-85 (Nov. 13, 2013).